CHAUNCEY E. PECK, administrator, *vs.* COLUMBUS
S. SCOFIELD.

Hampden.　April 1, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Trust,* Creation.　*Gift, Causa mortis.*　*Savings Bank.*

A married woman living apart from her husband made savings bank deposits in
her name as trustee for her adopted son, and also in the joint names of herself
and her adopted son subject to withdrawal by either or the survivor.　The
adopted son never knew of the deposits until after her death.　After retaining
the savings bank books for about three years and making deposits in the ac-
counts from time to time, the depositor in contemplation of a surgical operation
placed the books in the hands of a woman friend, with other similar books in a
sealed package, accompanied by a request in writing that the books for her son
should remain "in trust" for his benefit and the fund be used, in the discretion
of the trustee, for his clothing, education and expenses, and that if any balance
remained it was to be paid to the son absolutely upon his marriage or, if his
father died before him, such payment in the discretion of the trustee could be
made before the son came of age.　The depositor did not die from the operation
but lived more than two years, during which time, although once she made an
examination of them, she left the books in the control and possession of the
trustee, who continued to hold them until after the death of the depositor.
*Held,* that these facts warranted a finding that an express trust was created,
and that the delivery of the bank books was not intended as a *donatio causa
mortis.*

APPEAL by the surviving husband of Nellie M. Scofield, de-
ceased intestate, from a decree of the Probate Court for the
county of Hampden allowing in the account of the administrator
of her estate an item, in the schedule showing payments, charges
and distributions, of " Savings Bank deposits claimed by Charles
M. Scofield, $2,207.13."

The appeal was heard by *Lathrop,* J., who found " on the agreed
facts and the evidence, that Mrs. Scofield delivered the bank books
in question during her lifetime to Mrs. Bronson, in trust for the
benefit of her adopted son, Charles M., and that the delivery
was not intended as a *donatio causa mortis ;* and that said books
formed no part of the estate of Mrs. Scofield at the time of her
death."

The justice made a decree affirming the decree of the Probate

Court, and remitting the case to the Probate Court for further proceedings. The respondent appealed.

*J. Barnes*, for the respondent Columbus S. Scofield.

*C. H. Barrows*, guardian *ad litem*, for Charles M. Scofield.

BRALEY, J. This is an appeal from the decree of a single justice of this court affirming a decree of the Probate Court allowing the account of the appellee as administrator of the estate of Nellie M. Scofield. The only question presented by her husband, the appellant, is whether an item of $2,207.13, being the amount of certain deposits in savings banks made by the intestate, is to be deemed an asset of her estate, or held to be a trust fund created by her for the benefit of an adopted son, Charles M. Scofield. The material facts do not appear to be in dispute, and they show that the deposits which make up this amount are five in number; two of them were made in the name of Nellie M. Scofield in trust for Charles M. Scofield, while two are described as deposited by Nellie M. Scofield and Charles M. Scofield subject to the withdrawal of either or the survivor, and the fifth account is in the name of "Nellie M. Scofield or Charles Mears Scofield."

At the time of making each deposit none of the money deposited belonged to the adopted son, but it was advanced by the intestate, and the books were never delivered to him, neither, up to the time of her death, had he been informed of the fact that such deposits had been made, while she continued to retain possession of the books and remained in control of the fund until the time when in contemplation of a surgical operation she placed the bank books in the hands of a friend. At the time of their delivery they were placed with other similar books in a sealed package, and accompanying the books, and forming a part of its contents were two requests in writing signed by her, in which she gave directions as to the disposition that should be made of all the books in the event of her death. That portion of these writings which relates to the controversy in this case states in substance that the books for her son are to remain in trust for his benefit, and the fund is to be used, in the discretion of the trustee, for his clothing, education and expenses, and if any balance remains after carrying out this provision it is to be paid to him absolutely upon his marriage, or if his father dies

before him, then in the discretion of the trustee such payment could be made before he became of age.

It is the contention of the appellant that by this transaction her sole purpose was to make a gift *causa mortis*, and that unless it can be so considered then these deposits must be held to be a part of her estate.

If we put to one side the obvious answer that whether in any case the intention to make such a gift has been established is a question of fact which must depend on the evidence, and that the finding is adverse to this claim, an examination of the testimony does not furnish a sufficient foundation to support the argument advanced.

If it can be said that at any time before the operation was performed it was of such a character as reasonably to cause apprehension on her part that she could not survive, it also appears that the first letter of which the second is only an amplification, though both may be treated as forming a declaration of trust, was written nearly five months before the package was delivered by her to the trustee, or she went to the hospital for treatment, and during a period when resort to such an operation was not immediately contemplated.

While the form of the deposits is immaterial if no delivery is shown, yet it becomes important upon delivery being proved when the question is raised whether the entire transaction is to be regarded as a trust, or only a gift in present contemplation of death.

At least the first two of the deposits had been made three years before the date of the letter and in the form to which reference has already been made, and these were followed by other deposits of a similar character, and all of whatever date are spoken of by her in each letter as a trust fund.

It may be conceded as argued by the appellant that when a gift is made in expectation of death there is always present the implied condition that it is revocable by the recovery of the donor, which event happened in this case. *Parish* v. *Stone*, 14 Pick. 198, 204.

But it does not follow that because such a gift cannot be found on the facts disclosed, the money belongs to her estate if a reasonable interpretation of her acts leads to the conclusion

that in some form it was her intention to provide for the support and education of her son, and she took the necessary steps from which such a purpose not only can be ascertained, but may be legally carried into effect.

A trust in personal property does not require a written declaration to support it, though when put in this form its terms are more readily and satisfactorily determined, but it may be supported by oral evidence; and when it appears that a trust of this nature has been created it becomes effectual to transfer the title and operates as a gift perfected by delivery of the property which constitutes the body of the trust. But there must be always some qualifying act by which the donor's ownership of the fund is divested, followed by an acceptance by the person selected to act as trustee, of the duties raised by the fiduciary relation. *Urann* v. *Coates*, 109 Mass. 581, 584. *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159. *Chace* v. *Chapin*, 130 Mass. 128.

In the case at bar there was a sufficient formal declaration of the object to be accomplished independently of the statements appearing in the form in which the several deposits were made. In plain and unambiguous words the settlor declared her purpose in each paper to be that all the deposits standing in the name of her son, or of herself, but really intended for his use and benefit, were in trust " to be used for his clothing, education and expenses as in your judgment you see he needs." Domestic differences had apparently arisen, and at this time she was not living with her husband, from whom she remained separated until her death, and her desire seems to have been not only to make pecuniary provision for her son, but at the same time to provide him with some measure of friendly interest and advice on the part of the trustee to whom she speaks in words of personal entreaty that fully disclose her thought. " Charlie needs as he grows older . . . a loving friend to be interested in what such a boy needs. Don't lose sight of him, let him feel he has a precious friend in you, for his mother's sake."

When Mrs. Bronson, to whom this declaration was formally addressed, received it, together with the bank books, there was a symbolical delivery to her of the fund which was held on deposit by the several banks which had issued them.

The conduct subsequently of Mrs. Scofield is confirmatory of her original purpose, for after all this had been done a period of more than two years elapsed before her death, during which time no change was made in the form of the transaction, though once at least she made an examination of the books, but still left them in the possession and control of the trustee, and nothing appears to show any change of her primary intention, and even less any desire on her part to revoke the trust.

If we take into consideration the relation of the parties, the object of the gift shown by the written declaration, and the conduct of the trustee, who understood that a trust had been declared which she was to execute, though after the death of Mrs. Scofield she thought under the circumstances it · was better for her not to have anything to do with it, and 'delivered the books to the administrator, enough appears to show that a complete declaration of trust was made by the owner of the fund, followed by a delivery to the person who was to act as trustee, not only of the writing, but of the property itself, and that this trust was accepted. It therefore could be found properly that the property was held by Mrs. Bronson upon an express trust, the terms of which were fixed and definite, and that there had been a perfected gift for that purpose of the fund now on deposit. *Cleveland* v. *Hampden Savings Bank*, 182 Mass. 110, 112.

If so, then the title to these deposits had passed to the trustee, and at the death of the founder of the trust they formed no part of the assets of her estate. *Chace* v. *Chapin, ubi supra.*

*Decree affirmed.*