# The People of the State of Illinois, Appellee, v. Phillip J. Dietmeyer, Appellant.

## Gen. No. 5,526.

1. EVIDENCE—*when letter and postmarked envelope not competent.* A letter with a post-marked envelope is incompetent which has not been received by the addressee and which is authenticated only by the statements made in another letter written by the sender which enclosed the undelivered letter and envelope.

2. EVIDENCE—*what proper cross-examination of medical expert.* It is proper upon cross-examination of a medical expert to put to him hypothetical questions containing supposed states of fact other than those shown by the evidence.

3. EVIDENCE—*what improper cross-examination.* Questions as to matters not inquired into upon direct examination are not proper upon cross-examination.

4. INSTRUCTIONS—*when upon interest of complaining witness properly modified.* Held, that an instruction which told the jury that the complaining witness was interested in the event of the suit and that that fact might be considered in determining her credibility, was properly modified by adding thereto the words "as well as all other evidence in the case."

5. INSTRUCTIONS—*when, as to effect of false testimony by complaining witness, properly refused.* An instruction which tells the jury that if they believe that the complaining witness has testified falsely upon a material issue in the cause they should find for the defendant, is properly refused if there was other evidence in the cause which would have justified a verdict against the defendant.

6. INSTRUCTIONS—*when as to scrutiny to be given testimony properly refused.* An instruction which singles out the complaining witness and tells the jury that they "should scrutinize her testimony with care and caution," is properly refused where the jury under the law should scrutinize the testimony of the defendant as closely as that of the complaining witness.

7. INSTRUCTIONS—*when as to right to disregard testimony properly refused.* The testimony of a witness may only be disregarded where it is wilfully and corruptly false and even then it can only be disregarded where it is not corroborated by other credible evidence or by facts and circumstances proved on the trial, and an instruction which ignores these rules of law is properly refused.

8. Appeals and errors—*how affidavit preserved for review.* An affidavit setting up newly discovered evidence is not preserved for review unless incorporated in the bill of exceptions.

Bastardy. Appeal from the County Court of Lake county; the Hon. De Witt L. Jones, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911.

Cooke, Pope & Pope, for appellant.

Ralph J. Dady and Claire C. Edwards, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Phillip J. Dietmeyer appeals from a judgment of the court below finding him to be the father of the bastard child of Mary Gallagher, and alleges that the court erred in its rulings upon the evidence and the instructions, and that a new trial should have been granted because the verdict is not supported by a preponderance of the evidence.

The child was born June 17, 1910. Mary Gallagher testified that appellant came to her father's home on Sunday evening, September 26, 1909, and took her for a ride and during that ride had intercourse with her by the side of the road, while the horse stood unhitched, and that the child was the fruit of that intercourse. Her mother testified that appellant came for Mary that evening and took her for a ride. Appellant testified that he was not with Mary Gallagher the evening of September 26, but that on that evening he went to the residence of John Chope, about three and one-half miles from the Gallagher place, and there met a man named Fell, and afterwards took Mabel Chope for a ride and drove with her to Waukegan and back, returning to the Chope home between eleven and twelve o'clock P. M. He was corroborated by Chope, who testified that appellant came to his home on the even-

ing of September 26 and met Fell there and then took
Mabel for a drive and came back late in the evening.
In this state of the proof Chope produced a letter,
dated Amboy, Illinois, November 13, 1909, addressed
to Mr. Chope at Wadsworth, Illinois, and professing to
be signed by Fell, enclosed in which was a letter dated
Amboy, Illinois, September 24, 1909, addressed to
Chope and signed by Fell, stating that he would start
the next morning on a visit to the Chopes, and also an
envelope, bearing a postmark showing the letter mailed
at Amboy September 24, and another postmark, show-
ing it received at Millburn September 25, and an en-
dorsement showing that the letter was returned to the
sender because the party was not there.    Chope testi-
fied that their mail route had been changed to rural de-
livery and he did not get the letter.    Appellant offered
these letters and the first envelope in evidence, and the
court sustained an objection thereto.    The purpose of
the evidence was to corroborate appellant and Chope
in their testimony that Fell was at the Chope residence
on September 26.    Fell was not called as a witness.
The only proof that the letter and envelope enclosed by
Fell to Chope on November 13 was in fact written and
mailed on September 24 and that the stamps impressed
thereon were placed there by the United States in the
regular course of the transmission of the letter, was
contained in the letter written by Fell, dated Novem-
ber 13.    The statements in this letter were not sworn
to by anybody, and therefore the evidence was incom-
petent.

Each side called medical experts as to the period of
gestation.    On cross examination of a physician called
by the People, appellant's counsel asked a hypothetical
question, not based on the evidence, and the court sus-
tained an objection thereto.    We think that it was
competent to test the views of the expert by putting to
him supposed states of fact differing from that shown

in the evidence, but the actual question had little sense or meaning and there was no particular controversy between the views of the physicians called by the respective parties, and none of them gave any testimony at all decisive of this case, and we are of opinion that there was no reversible error in refusing to permit this particular question to be answered. On the cross examination of Mary Gallagher she was asked if she had ever sent word to Leslie Dietmever, a brother of appellant, to come to her place, and also, if on September 10, 1909, she sent word by Irene Dietmever to tell appellant she wanted to see him the next Sunday night. The court sustained objections to these questions. This was not cross examination of anything testified to by Marv Gallagher. Moreover. Irene Dietmever testified that Mary Gallagher did send such word to Leslie Dietmeyer and did send such word on September 10, 1909, to appellant, and Marv Gallagher did not deny this testimony, so that the fact was proven, and the record therefore contains no error on that subject.

Leslie Dietmeyer was a witness for appellant and was asked if he had ever seen Mary Gallagher out with other young men alone during the months of August, September or October, and the court sustained an objection to this question. Counsel for appellant have not dealt properly with the court in abstracting this part of the record and in discussing this objection, since they have omitted the fact that the record shows that immediately after the question above, Leslie testified that he had never seen Mary Gallagher in company alone with other young men during the month of September or during the latter part of August or during the fore part of October. These answers covered all the time during which the child could have been begotten, and appellant has in fact nothing of which to complain.

Appellant requested the court to instruct the jury

that Mary Gallagher was interested in the event of the
suit and that that fact might be considered in determin-
ing her credibility as a witness, which the court modi-
fied by adding thereto the words: "as well as all the
other evidence in the case." This modification stated
the law and did not detract from the force of the in-
struction.     The court refused the tenth instruction re-
quested by defendant, which after reciting the testi-
mony of Mary Gallagher that the intercourse took
place on September 26, 1909, and the evidence of appel-
lant that he was elsewhere at that time, told the jury
that if they believed that Mary Gallagher testified
falsely in that regard they should find for appellant.
The instruction was erroneous. Mary Gallagher may
have been mistaken as to the date and this intercourse
may have taken place on the evening of Sunday, Sep-
tember 12, as will be seen hereafter.    Upon this rec-
ord it does not necessarily follow that if the intercourse
did not take place on September 26, the verdict was re-
quired to be for appellant    The court refused the
twelfth instruction requested by appellant, to the ef-
fect that if the jury believe that the charge rested alone
on the testimony of Mary Gallagher "then you should
scrutinize her testimony with care and caution." The
case did not rest solely on the testimony of Mary Gal-
lagher and there was no more reason why her testi-
mony should be scrutinized with care than the testi-
mony of appellant, and the instruction should not have
been a command to so scrutinize her testimony.    The
court refused instruction No. 14, requested by appel-
lant, which was to the effect that if the only evidence
tending to prove the guilt of appellant was the testi-
mony of Mary Gallagher and if it was on any material
point untrue, then the jury were at liberty to disregard
her entire testimony.    This instruction was erroneous.
Such testimony may only be disregarded where it is
wilfully and corruptly false, and even then it can only

be disregarded where it is not corroborated by other credible evidence or by facts and circumstances proved on the trial.    Appellant contends that the court erred in refusing to give an instruction at the close of all the evidence to find the defendant not guilty.    Mary Gallagher testified that the defendant was the father of her child, and upon a motion to instruct for appellant the court could not weigh the evidence, and it would have been error to so instruct the jury.    The motion for a new trial was in part based upon the alleged discovery of new testimony, to be given by the mother of appellant.    The clerk has inserted in his record an alleged affidavit by Mrs. Dietmeyer, but said affidavit is not contained in the bill of exceptions, and the clerk had no power to make it a part of the record.    Pardridge v. Morgenthau, 157 Ill. 395; Anderson Transfer Co. v. Fuller, 174 Ill. 221; People v. Drainage District, 235 Ill. 278.    We find no reversible error of law in the record.

At the time this child was begotten Mary Gallagher was less than twenty-two and a half years old and appellant was an unmarried young man, living with his father upon a farm about a mile from the Gallagher farm.    The parties had known each other since childhood and had been keeping company with each other about four years before the trial or about three years before this child was begotten.    She testified that beginning about two and a half years before the origin of this child, she had had intercourse with appellant on numerous occasions.    It appeared that he had ceased to go alone with her about July, 1909, and had begun going with Mabel Chope.    He denied that he had ever had intercourse with Mary Gallagher.    He not only denied having taken her for a ride on Sunday evening, September 26, but he also denied that he had been with her or taken her to ride during any Sunday evening that month and testified that he had taken Mabel Chope for

a drive each Sunday evening in August and in September, and he particularly stated the hour when he went to drive with Miss Chope on the second Sunday in September and the hour when they returned. He, however, casually admitted that he did take Mary Gallagher for a drive on the evening of September 12, and when he ascertained that September 12 was Sunday, he then testified that on that Sunday he did not take Mabel Chope for a drive but did take Mary Gallagher. This change in his testimony was calculated to weaken his credit before the jury. He proved by himself and his father that the horse which he drove on Sunday evening, September 26, was spirited and would not stand unhitched by the side of the road. He produced his brother, Leslie Dietmeyer, who testified that he had Mary Gallagher out for a drive the latter part of August, 1909, and the second of October, 1909, and each time had sexual intercourse with her. He also produced as a witness one Frank Hauser, who testified he took Mary Gallagher for a drive in the evening of August 30, 1909, and had sexual intercourse with her. This record presented a question of fact for the jury. If the jury believed Mary Gallagher, then the child was begotten on September 26 and born 264 days later. Much is made by appellant of the medical testimony that the usual period of gestation is 280 days, or as some of the physicians said, from 264 to 284 days, and that this was a well developed child. It is entirely possible that the jury may have believed that Mary Gallagher's testimony was true, except that she was mistaken in the date and that the child was conceived during the drive testified to by appellant on September 12, which would make the period of gestation 278 days. It may well be that the jury did not believe the testimony of Leslie Dietmeyer and Hauser. The jury and the trial judge have believed Mary Gallagher. The state of the evidence is such that a verdict either way,

supported by the trial judge, must be affirmed where no serious error of law intervened.

The judgment is therefore affirmed.

*Affirmed.*